ANHEUSER–BUSCH, INC., Plaintiff
and Counterdefendant,

v.

NATURAL BEVERAGE DISTRIB-
UTORS, et al., Defendants and
Counterplaintiffs.

No. C–89–891–JPV.

United States District Court,
N.D. California.

Sept. 9, 1993.

Peter E. Moll, Carmine R. Zarlenga, John J. Rosenthal, Howrey & Simon, Washington, DC, Timothy E. Carr, Gilmor R. Murray, Carr & Mussman, San Francisco, CA, for plaintiff and counter-defendant.

Joseph L. Alioto, Richard D. Rosenberg, Law Offices of Joseph L. Alioto, San Francisco, CA, for defendants and counterplaintiffs.

## ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

VUKASIN, District Judge.

### INTRODUCTION

Plaintiff and Counterdefendant Anheuser–Busch, Inc. ("Anheuser") brought a motion to dismiss the counterclaim of defendants and counterplaintiffs Natural Beverage Distributors ("Natural Beverage"), Mendocino Coast Distributing Company, Inc., and Florence M. Beardslee. An evidentiary hearing regarding the motion was held on February 17 and 19, and on March 1 and 2. Peter E. Moll of Howrey and Simon appeared for plaintiff and Richard D. Rosenberg of the law offices of Joseph L. Alioto appeared for defendants. After hearing the evidence and the arguments of counsel, and reviewing the entire record, the court now GRANTS the motion to dismiss.

## BACKGROUND

Plaintiff Anheuser filed this action seeking a declaratory judgment that it was acting within its contractual rights in terminating the distributorship of defendants. Defendants filed a counterclaim alleging that Anheuser had unreasonably disapproved of the proposed sale of defendants' distributorship. By order dated December 21, 1989, the court granted plaintiff's motion for summary judgment on plaintiff's claim and denied plaintiff's motion for summary judgment on the counterclaim. Trial on the counterclaim was held in January and February of 1992. After a jury returned a verdict for counterplaintiff, the court granted Anheuser's motion for a new trial. The counterclaim was scheduled for re-trial in January of 1993.

In December of 1992, Anheuser filed a motion to dismiss the counterclaim, appealing to the court's authority under Fed.R.Civ.P. 37 to dismiss an action where a party has violated court-ordered discovery. Anheuser alleges that defendant Beardslee concealed from Anheuser the existence of crucial documents relating to the finances of Natural Beverage (which Beardslee owned at the time). These documents were said by Beardslee to have been destroyed by fire in 1989; Anheuser alleges that the documents survived the fire and that Beardslee has long had knowledge of their existence and lied to Anheuser and the court about their alleged destruction. Anheuser asserts as an additional basis for dismissing the counterclaim allegations that Beardslee has repeatedly violated the court's pre-trial publicity order. Anheuser's motion to dismiss is the subject of this Order.

## DISCUSSION

### I. Standard for Dismissal of Action

Anheuser asserts as a basis on which the court can dismiss the counterclaim the sanctions for discovery abuses as provided by Fed.R.Civ.P. 37. Rule 37 provides in pertinent part:

"If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . .

(C) An order ... dismissing the action or proceeding or any part thereof, or rendering a judgment or default against the disobedient party."

Fed.R.Civ.P. 37(b)(2)(C).

"[T]he district court must weigh five factors before imposing dismissal: (1) the public's interest in expeditious resolution of the litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. The first of these two factors favor imposition of sanctions in most cases, while the fourth cuts against a dismissal sanction. Thus the key factors are prejudice and the availability of lesser sanctions."

*Henry v. Gill Industries, Inc.,* 983 F.2d 943, 948 (9th Cir.1993) (citations and quotations omitted).

The *Gill Industries* court also adds a sixth factor: "Where the drastic sanctions of dismissal or default are imposed, however, the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith." *Id.* at 946 (*quoting Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334, 1337 (9th Cir.1985)).

### II. Concealment of Documents

Anheuser alleges that dismissal of the counterclaim is appropriate because Beardslee has willfully committed an egregious discovery violation that has severely prejudiced Anheuser, and that lesser sanctions would not be effective.

The claims of the parties regarding the discovery of certain business documents are conflicting. Anheuser alleges that Beardslee has concealed the existence of relevant business documents that survived a 1989 fire at her warehouse. Beardslee alleges that she believed the fire had destroyed all of her business records. There is no dispute that the documents in question did survive the fire in legible form and that the documents

were subject to discovery requests. The central dispute for purposes of the motion to dismiss is, to borrow a phrase from a more well-known dispute, what Beardslee knew and when she knew it. That is, unless Beardslee knew of the documents' existence, her failure to produce them was not willful or in bad faith, and thus under *Gill Industries* would not subject her to the dismissal sanction.

In order to resolve the conflict in the parties' allegations as to Beardslee's knowledge of the documents' existence, the court held the evidentiary hearing. At the hearing, the court was able to evaluate the credibility of the witnesses. Having done so, the court finds that Beardslee's story is utterly devoid of credibility. Not only are there internal inconsistencies within her own statements, but there are too many credible witnesses with no interest in the litigation whose testimony flatly contradict · her statements. The court also finds that Anheuser has been prejudiced by defendants' discovery abuses and that sanctions less than dismissal would not be effective. Accordingly, the court finds dismissal of the counterclaim the only appropriate sanction.

## A. Willful Failure to Make Discovery

■ This court will first set forth its findings of fact with regard to the history of the documents. Then the court will analyze in greater detail the testimony of various witnesses, including Beardslee.

### 1. History of the Documents

The following are the court's findings of fact, in narrative form, regarding the history of the documents with respect to this litigation.

Florence Beardslee kept her records for Natural Beverage in the Natural Beverage warehouse, located in Fort Bragg, California. A fire burned the warehouse on December 10, 1989. The fire badly damaged the warehouse, particularly the office and loft areas, where Natural Beverage's business records were principally stored. In the days following the fire, Beardslee inspected the warehouse. She witnessed extensive fire and water damage throughout the warehouse and a large pile of badly damaged documents in the center of the warehouse floor.[1] On December 12, 1989, she signed a form granting the Fort Bragg Police Department ("Police") permission to search the warehouse pursuant to an investigation of the fire.[2] Also on December 12, she told Bureau of Alcohol, Tobacco and Firearms ("Bureau") agent Darren Gil that she believed that Anheuser was responsible for the fire, postulating that Anheuser wanted her out of business since she was engaged in the instant litigation against Anheuser. Beardslee further told Agent Gil that most of her business records were still in the warehouse.[3]

On January 4, 1990, Bureau agents Joseph Stafford and Darren Gil executed a search warrant on the warehouse. The agents seized eight filing cabinets filled with documents and seven cardboard boxes of documents. With regard to these documents, those that Stafford saw were legible.[4] On January 11, Beardslee was interviewed by Stafford and Police Detective James Grant.[5] During the interview, Beardslee asked "When you took the files, did you take the filing cabinets too, or just the files?" When told by Stafford that he had the cabinets, too, Beardslee asked if he could count them for her and suggested that she might like to go look at them herself.[6] Beardslee also stated

---

1. Declaration of Florence M. Beardslee in Opposition to Anheuser's Motion to Dismiss Counterclaim. *See also* Testimony of Florence Beardslee, Evidentiary Hearing Transcript at 261–64.

2. Permission to Search Form, Plaintiff's Hearing Exhibit 1.

3. Affidavit of Darren Gil for Search Warrant, Plaintiff's Hearing Exhibit 4.

4. Testimony of Joseph Stafford, Evidentiary Hearing Transcript at 25–30; Search Warrant and Return, Plaintiff's Hearing Exhibit 5.

5. Testimony of Joseph Stafford, Hearing Transcript at 30–31.

6. Transcript of Interview of Florence M. Beardslee at 39–40 (January 11, 1990), Plaintiff's Hearing Exhibit 10. Stafford further testified that upon reviewing the interview tape, he remembered taking Beardslee to view the files after the

later that she didn't believe the fire was an inside job because:

> "anybody with keys ... [who] wanted to go in there to destroy documents, all they had to do was take them.... Or if they were going to set a fire from inside, they would have made sure—those fire cabinets aren't going to burn, they're all metal." [7]

In January of 1990, Les Pierce—then a detective of the Fort Bragg Police—called Beardslee to inform her that business documents had been salvaged from the warehouse and were being stored at a Police Facility. In January of 1990, Beardslee called Pierce several times to inquire about the documents, indicating that she wished to retrieve them for tax purposes. Also in January of 1990, Beardslee visited the Police Facility with Pierce to view the documents, at which time she saw the filing cabinets taken from the warehouse and saw the documents inside a drawer of one cabinet. The documents were legible.[8]

On June 18, 1991, the court issued an order granting Anheuser's motion to conduct additional discovery regarding the finances of Beardslee and Natural Beverage. The order read in part:

> "Taken together, these items [financial representations made by Beardslee] paint a picture of inconsistency which this court considers to be deeply troubling. To be blunt, it is difficult to conceive of an accounting system under which all of the facts just outlined could be true....
>
> ....
>
> Most importantly, however, there would be substantial prejudice to the system of justice and this court's integrity if a litigant were permitted to mislead the court. This court does not find at this time that defendants have engaged in dishonest conduct. However, there emerges a startling lack of clarity and a possibility of impropriety which must be addressed. Where,

as here, a party seeking relief bears the burden of proving a fact, the type of obdurate behavior exhibited by defendant Beardslee at her deposition appears highly inappropriate. While this court does not now make a finding of wrongdoing, let the parties and their attorneys read these words and be warned." [9]

In accordance with the court's June 18, 1991 order, Anheuser served interrogatories on defendants. On August 29, 1991, Beardslee made the following statement in her response to Anheuser's interrogatories:

> "Key financial records used in the preparation of tax returns for Florence M. Beardslee (individual tax returns), Mendocino Coast Distributors Company, Inc., and Natural Beverage Distributors were destroyed in a fire at Ms. Beardslee's warehouse located at 930 North Franklin Street in Fort Bragg, California on December 10, 1989. These financial records constituted the bulk of the documentation relied upon in the preparation of the tax return entries which are the subject of these interrogatories ... The above-described missing financial records, which were destroyed in the warehouse fire, were the only records which could have been referenced to provide a more complete and more specific response to these interrogatories." [10]

In September of 1991, Beardslee was deposed by Anheuser, as permitted by the court's June 18 order. During the deposition, Beardslee repeatedly testified that all of the documents stored at the warehouse were destroyed. Illustrative of her testimony is the following excerpt:

> "Q. What happened to those documents?
>
> A. They were destroyed. They were in the fire. Everything that was in Fort Bragg was either burned or water-dam-

---

interview. Testimony of Joseph Stafford, Hearing Transcript at 35, 50–52.

**7.** *Id.* at 119.

**8.** Testimony of Les Pierce, Evidentiary Hearing Transcript at 58–60; Declaration of Les Pierce in

Support of Anheuser's Motion to Dismiss Counterclaim.

**9.** Order of June 18, 1991.

**10.** Defendants' Responses to Interrogatories (August 29, 1991) at 3–4.

aged beyond the point where it was even feasible to keep it." [11]

In November, 1991, Beardslee filed an opposition to Anheuser's application for leave to file a motion for summary judgment. In that document, she stated:

"[W]hat has not and cannot be produced are the documents burned in the December 1989 fire of the Natural Beverage Warehouse. All documents have been produced to Tim Carr, Esq. Nothing has been withheld. Florence Beardslee answered the deposition questions to the best of her ability." [12]

In December of 1991, Bureau Agent David Lierz called Beardslee to inform her that the Bureau no longer needed custody of the files and that she could have them returned to her if she would execute a release form.[13] He sent the form to Beardslee, but she testified that she did not receive it.[14] Over the next several months, Agent Lierz periodically called Beardslee, asking that she send in the release form.[15] One such contact occurred on the night of January 27, 1992—which was during the time Beardslee's counterclaim was being tried before this court. Agent Lierz testified that Beardslee told him on January 27 that she did not want to execute the release form until after the trial because if she got the documents back during the trial, she may have to produce them to Anheuser, and Anheuser might use that as an excuse to postpone or delay the trial.[16] The next day—January 28, 1992—Beardslee took the witness stand. During cross-examination, the following testimony ensued:

"Q. But did you ever provide backup documentation of any sort? For example, invoices that would show why it was the figure on your financial statement is not the correct figure?

A. No. Would you like me to explain why I didn't?

Q. Sure. Please do.

A. I was never asked for any back-up documentation until after the fire occurred, which destroyed the back-up documents." [17]

In March of 1992, Lierz again spoke with Beardslee. She told him that she wanted the documents for several reasons, including for use in an audit that she stated the IRS was going to conduct. Lierz received the release form from Beardslee on March 5, 1992.[18]

In April of 1992, Beardslee sent her friend, Tony Stanford, to Fort Bragg to retrieve "whatever documents were legible" from 1987 forward.[19] Stanford retrieved about eight boxes of legible documents dated 1987 forward. He spoke with Beardslee soon after retrieving the documents, telling her that he had retrieved them and asking her to pick them up or arrange for their delivery from

---

11. Florence Beardslee Deposition at 1264 (September, 1991), Exhibit 10 to the Declaration of Timothy E. Carr in Support of Anheuser's Motion to Dismiss Counterclaim. *See also id.* at 747 ("When I came to may ware house the day after the fire, the fire department had ... all of the documents and all of the file drawer emptied out in the middle of the floor in the warehouse, soaking wet, mixed with ashes. There was no way I could have salvaged anything."); *id.* at 903 (every document was destroyed either by fire or by water).

12. Defendants' Opposition to Anheuser's Application for Leave to File Motion for Summary Judgment at 3-4.

13. Testimony of David Lierz, Hearing Transcript at 70-74. *See also* Declaration of David Lierz in Support of Anheuser's Motion to Dismiss Counterclaim.

14. Testimony of Florence Beardslee, Hearing Transcript at 364-365.

15. Declaration of David Lierz in Support of Anheuser's Motion to Dismiss Counterclaim.

16. Testimony of David Lierz, Hearing Transcript at 77. *See also* Investigation Report of Agent Lierz, Exhibit D to the Declaration of Carmine R. Zarlenga in Support of Anheuser's Motion to Dismiss Counterclaim.

17. Testimony of Florence Beardslee, Trial Transcript at 887.

18. Declaration of David Lierz. *See also* Investigation Report of Agent Lierz.

19. Tony Stanford Deposition (McKinney case) at 39-40, Plaintiff's Hearing Exhibit 21. The McKinney case is a related action, brought by plaintiffs McKinney against Anheuser for blocking the proposed sale of Beardslee's distributorship to the McKinneys.

his home in San Francisco.[20] In October of 1992, Stanford delivered the documents to Beardslee in Newport Beach.[21] On October 28, 1992, Beardslee notified Anheuser of the existence of those documents.[22] Production of those documents was completed on November 30, 1992. Anheuser subpoenaed the documents remaining in the custody of the Fort Bragg Police (those not retrieved by Tony Stanford), some of which are relevant to the case at bar.[23]

### 2. Analysis of Testimony

Beardslee's testimony is flatly contradictory to the testimony of several law enforcement officials who have no motive to lie and whose testimony is frequently buttressed by contemporaneous business records made by them. Beardslee's testimony is also at times in conflict with other statements made by her.

The gravamen of Beardslee's opposition to Anheuser's motion to dismiss is that she did not know what property had been seized by the Bureau or the Police, and to the extent that she may have had any shadowy knowledge that documents had been seized, she believed that the documents were illegible.[24] Further, she argues that she acted in good faith because as soon as she did realize that legible, relevant documents survived, she turned them over to Anheuser.[25]

Beardslee's argument that she did not know that documents had been seized is contradicted by the testimony of Les Pierce, who told her that files had been seized and showed her a drawer full of legible documents in January of 1990. The affidavit in support of search warrant executed by Bureau agent Gil, which states that Beardslee told him on December 12, 1989 that she believed her business records were still in the warehouse, also does violence to her contention, as does the return on the search warrant that Bureau agent Stafford left at her warehouse after seizing the files and cabinets on January 4, 1990.[26] Beardslee's assertion is further belied by the January 11, 1990 answer of Stafford to her question as to whether the Bureau had seized the files or just the file cabinets. Additionally, Agent Lierz, in December of 1991, read to her from a report describing the property seized, including the sentence that "all of the above containers contain business records for Natural Beverages," and on December 30, 1991 he sent the release form to her by Federal Express.[27] These events show conclusively that Beardslee knew from the beginning that her business records—whatever their condition—were being held by the Fort Bragg Police. Nonetheless, in December of 1992, Beardslee testified at her deposition in the McKinney case that she did not know how long the files had been held by the Fort Bragg Police and that she became aware of the documents only a few months earlier.[28] In light of the overwhelming evidence to the contrary, it is difficult to characterize that testimony as anything but perjury.

Beardslee's assertion that she did not know that the documents (if any) were legi-

**20.** *Id.* at 55–59.

**21.** *Id.; see also* Declaration of Florence Beardslee in Opposition to Anheuser's Motion to Dismiss Counterclaim at 5.

**22.** Letter from Richard Rosenberg to Peter Moll (October 28, 1992), Plaintiff's Hearing Exhibit 20.

**23.** *See* Declaration of Carmine R. Zarlenga in Support of Anheuser's Motion to Dismiss Counterclaim.

**24.** *See* Declaration of Florence Beardslee in Opposition to Anheuser's Motion to Dismiss at 3; Memorandum in Opposition to Anheuser's Motion to Dismiss Counterclaim at 1, 15; Opening Statement of Richard Rosenberg, Hearing Transcript at 17–18.

**25.** Memorandum in Opposition to Anheuser's Motion to Dismiss Counterclaim at 1; Opening Statement of Richard Rosenberg, Hearing Transcript at 19–20.

**26.** Testimony of Joseph Stafford, Hearing Transcript at 28–30; Return, Plaintiff's Hearing Exhibit 5 at 2.

**27.** Testimony of David Lierz, Hearing Transcript at 71–73; *See also* Release Form, Plaintiff's Hearing Exhibit 12; Federal Express receipt, Plaintiff's Hearing Exhibit 13.

**28.** Florence Beardslee Deposition (McKinney case) at 39, 55. At the hearing, Beardslee affirmed that her December testimony was that she did not know how long the documents had been stored by the Fort Bragg Police. Testimony of Florence Beardslee, Hearing Transcript at 328.

ble is contradicted by Pierce's testimony that she saw a drawer full of legible documents in January of 1990 and that she wanted the files back for tax purposes. Illegible documents are not useful for tax purposes. Her assertion is also belied by her January 11, 1990 statement to Agent Stafford that anyone who wanted to destroy the documents would do better to steal the documents than to try to light them on fire, since the file cabinets were made of metal. Her statement to Bureau agent Lierz in January of 1992 that she didn't want the documents then because she might have to produce them to Anheuser implies that she believed they were legible, since illegible documents would not be of any use to Anheuser in discovery. Similarly, her statement to Lierz in March of 1992 that she wanted the files back because she was going to be audited by the IRS implies that she believed they were legible since illegible documents are useless in a tax audit. Finally, in April of 1992 she sent Tony Stanford to pick up "whatever documents [that] were legible" and dated after 1986. This again implies that she knew that the records were legible. Given the credible evidence contradicting her assertions, the court finds that Beardslee's avowal that she did not know that the documents were legible is not credible. The court finds that Beardslee did know as early as January 1990 that some, if not many, of her business records had survived in legible form.

Beardslee also contends that she acted in good faith by turning over the documents to Anheuser as soon as she realized that they existed; at page three of her declaration in opposition to Anheuser's motion to dismiss the counterclaim, she states that "Until late October 1992, when I personally reviewed the documents for the first time, I did not know that legible business records relevant to this litigation existed." As discussed above, the court finds that she knew of their existence as early as January of 1990. However, for purposes of argument, the court will take her at her word. Even this argument,

standing alone, lacks credibility. Beardslee testified at the hearing that in April of 1992 she knew that legible documents existed because Tony Stanford had told her that he had retrieved legible business documents dated later than 1986.[29]

The only way to reconcile the two statements (those from her declaration and her testimony at the hearing) is to say that the former statement adds the qualifying phrase "relevant to this litigation." However, given that Stanford told her in April that he retrieved eight boxes of legible documents dated later than 1986, and that a significant percentage of the business records that she kept were relevant to this litigation (including bank records, deposit slips, checks, invoices, load sheets, sales summaries and other sales data), it is nothing but disingenuous for Beardslee to maintain that she did not know until October that the records he retrieved were relevant. The most favorably that this evidence can be construed for Beardslee is that she remained willfully blind to the probability that those records were relevant to this litigation. Yet she delayed for some six months before she finally arranged to get the documents from Stanford. This is hardly a sign of good faith, yet her attorney argued at the hearing that she had acted in complete good faith:

> "But the important thing—and I think this is really the crux of this whole case—when she found that there were documents that pertained to her case, we immediately contacted Anheuser and said, "We have these documents." [30]

The court finds that Beardslee did not act in good faith since she knew as early as January of 1990 that legible documents survived, yet she waited until after the trial to retrieve them. Even then, she delayed another six months—until two months before the re-trial was scheduled—to inform Anheuser of the document's existence. Production of the documents retrieved by Tony Stanford was not completed for an additional month.

**29.** Testimony of Florence Beardslee, Hearing Transcript at 383 ("Q. So, Ms. Beardslee, in April of 1992 you knew by your own testimony that legible documents existed? A. That's true").

**30.** Opening Statement of Richard Rosenberg, Hearing Transcript at 19.

Further relevant documents held by the Fort Bragg Police were not produced at all; Anheuser had to subpoena those documents themselves.

The court thus concludes that Beardslee violated the rules of discovery by not producing the relevant documents held by the Fort Bragg Police, or at least informing Anheuser of their existence. Such violations were willful and in bad faith, since—as discussed above—she knew of the existence of the documents as early as January of 1990. Accordingly, the element of bad faith required by *Henry v. Gill Industries, Inc.,* 983 F.2d 943 (9th Cir.1993), is present here.

### B. Prejudice

■ The Ninth Circuit in *Henry v. Gill Industries, Inc.,* 983 F.2d 943 (9th Cir.1993) cited "the risk of prejudice to the party seeking sanctions" as a "key factor" in determining whether the sanction of dismissal is appropriate. *Id.* at 948.

Beardslee argues that Anheuser has suffered no prejudice due to her failure to produce the documents because the documents were produced two months before the trial was scheduled to commence, in January of 1993. Further, Beardslee argues that Anheuser was not prejudiced by the absence of those documents because the documents actually disprove Anheuser's case.

Beardslee's arguments are erroneous. First, it is well established that "[b]elated compliance with discovery orders does not preclude the imposition of sanctions." *North Am. Watch Corp. v. Princess Ermine Jewels,* 786 F.2d 1447, 1451 (9th Cir.1986) (*citing National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam)). "Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts." *Id.* That Beardslee ultimately produced the documents in November—one or two months before trial—thus does not cure any prejudice otherwise suffered by Anheuser.

Standing alone, "[f]ailure to produce documents as ordered ... is considered sufficient prejudice" to justify dismissal. *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1412 (9th Cir.1990) (citing *Securities and Exchange Comm'n v. Seaboard Corp.,* 666 F.2d 414, 417 (9th Cir.1982)). Dismissal is thus appropriate here under *Adriana* alone. Moreover, "[a] defendant suffers prejudice if the plaintiff's actions impair the defendants's ability to go to trial or threaten to interfere with the rightful decision of the case." *Gill Industries* at 948 (*quoting Adriana* at 1412).

Here, Anheuser's ability to go to trial in January of 1992 was severely impaired by Beardslee's failure to produce the documents because it forced Anheuser to rely on incomplete and spotty evidence in presenting its financial analysis of Natural Beverage for 1988. Anheuser had blocked the proposed sale of Beardslee's distributorship to the McKinneys because Anheuser contended that the distributorship did not generate sufficient income for the McKinneys to meet their financial obligations. However, there was scant evidence regarding the income of the distributorship. At trial, Anheuser used 1988 as the base year for its financial analysis of Natural Beverage. Beardslee herself admitted that the 1988 documents are critical "because they are the original load sheets and bank deposits and invoices from '88, which was the year the whole trial was all about." [31] Had the documents seized by the Bureau—including checks, deposit slips, load sheets, invoices, and sales summaries for 1988—been available to Anheuser, it could have presented a much more solid financial picture of Natural Beverage, which would have been less assailable at trial than the picture Anheuser was able to present to the jury. Beardslee's failure to produce the documents also prejudiced Anheuser by subjecting it to great delays and expense before it was able to obtain the documents.

Beardslee argued at the hearing that the documents support her version of Natural Beverage's 1988 finances, not Anheuser's version. She maintains that the documents confirm that Natural Beverage generated sufficient income for the McKinneys to meet

---

**31.** Florence Beardslee Deposition (McKinney case) at 181–82.

their financial obligations. Her statement is disingenuous. If the documents proved her case, she would have used the documents to settle the controversy over Natural Beverage's income for 1988.

Accordingly, the court finds that Beardslee's failure to produce the documents prejudiced Anheuser.

### C. Availability of Lesser Sanctions

■ The court is convinced sanctions less than dismissal would not be effective. "In evaluating the propriety of sanctions, we look at all incidents of a party's misconduct." *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 947 (9th Cir.1993). Here, Beardslee has concealed documents for three years. Moreover, she has continuously lied about those documents under penalty of perjury.[32]

In June of 1991, after finding Beardslee's discovery responses inconsistent and "deeply troubling," the court granted Anheuser's motion for further discovery and warned Beardslee about possible future reprisal should her "startling lack of clarity" and "obdurate behavior" continue.[33] In response to discovery propounded by Anheuser in accord with the court's June 1991 order, Beardslee steadfastly maintained that all of the documents in her warehouse had been destroyed by fire. At trial, one day after receiving a phone call from Bureau agent Lierz reminding her that her files stored by the Fort Bragg Police could be released to her, she testified that all of the backup documentation for her tax and financial statements were destroyed by the fire.

The court's conclusion from this repeated behavior is that Beardslee does not take her oath to tell the truth seriously and that she will say anything at any time in order to prevail in this litigation. There is little guarantee that if the court were to impose lesser sanctions Beardslee's misconduct would cease.

Further, the court has repeatedly warned Beardslee about her inappropriate conduct. In addition to its warning regarding discovery in its June 18, 1991 order, the court has repeatedly warned Beardslee regarding violation of a pre-trial publicity order forbidding discussion of the case with members of the media.[34] Notwithstanding the warnings, Beardslee has repeatedly violated that order. On October 12, 1991 the court found that Beardslee had spent "a couple of days with one reporter and 14 hours with another reporter. I don't think it takes much by way of intelligence to realize that is a clear and blatant violation of the intent of the court's comments on July 25."[35] On January 15, 1992—during trial—the court again warned Beardslee that a violation of the publicity order would prompt the court to take action.[36] The court also made clear that at the adjournment of the trial that the order remained in effect.[37]

Nevertheless, Beardslee continued to have contacts with the press, including appearing on a syndicated radio talk show on July 31, 1992, on which she discussed matters pertaining to this case.[38] Additionally, during the summer of 1992 a series of articles ran in the *Napa Sentinel* (the local paper of Beardslee's former residence) that related detailed information regarding this case that only an insider could know.[39] Beardslee's actions

---

**32.** *See* discussion, *supra*, at footnotes 10–11 and related text in Section II.A.1. of this Order.

**33.** Order of June 18, 1991 at 4.

**34.** The pre-trial publicity order was first issued on July 25, 1989. *See* Hearing Transcript (July 25, 1989) at 40, Exhibit 16 to Declaration of Timothy Carr in Support of Anheuser's Motion to Dismiss Counterclaim.

**35.** Hearing Transcript (October 12, 1991) at 4, Exhibit 17 to Declaration of Timothy Carr in Support of Anheuser's Motion to Dismiss Counterclaim.

**36.** Trial Transcript at 487–88, Exhibit 18 to Carr Declaration.

**37.** Trial Transcript at 2471, Exhibit 20 to Carr Declaration.

**38.** *See* Transcript of Audiotape of July 31, 1992 Tom Valentine Interview of Jerri Beardslee, Plaintiff's Hearing Exhibit 31 at 10–12, 34, 36.

**39.** *See* "Single Parent v. The King of Beers," *Napa Sentinel*, June 16, 1992, Plaintiff's Hearing Exhibit 24; "Lady Packs a Pistol While Warring with King of Beers," *Napa Sentinel*, June 19, 1992, Plaintiff's Hearing Exhibit 25; "Judge Re-

display an abiding contempt and continuing disregard for this court's orders. She has consistently and "willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Wyle v. R.J. Reynolds Indus.*, 709 F.2d 585, 589 (9th Cir.1983).

Given Beardslee's repeated willingness to engage in any conduct that she believes will help her prevail in this litigation—including perjury and violation of the court's orders—the court finds that sanctions less than dismissal would not be effective. Accordingly, under the authority of Fed.R.Civ.P. 37, the guidance of Ninth Circuit precedent, and the court's inherent powers, the court finds it appropriate to grant Anheuser's motion to dismiss defendants' counterclaim.

## CONCLUSION

In accordance with the foregoing discussion, IT IS HEREBY ORDERED that Anheuser's motion to dismiss defendants' counterclaim is GRANTED. Defendants' counterclaim is hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

ceived a Barrage of Correspondence in Beer Case," *Napa Sentinel*, June 23, 1992, Plaintiff's Hearing Exhibit 28; "King of Beers Wants Case Dismissed Over Articles," *Napa Sentinel*, June 30, 1992, Plaintiff's Hearing Exhibit 29; "National Book Publisher Signs Beer Lady to Contract," *Napa Sentinel*, July 7, 1992, Plaintiff's Hearing Exhibit 32; "Judge, FBI Want to Know Source of Sentinel Articles," *Napa Sentinel*, August 7, 1992, Plaintiff's Hearing Exhibit 33.